# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JENNIFER L. MILLER,

       Plaintiff,

                                Civil Action 2:17-cv-881

v.                                 Magistrate Judge Jolson

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC., et al.,

       Defendants.

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 12), is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 20) and Defendants Honda Motor Co. Inc.'s and Sedgwick Claims Management Services Inc.'s Motions for Judgment on the Pleadings (Docs. 25, 26).  Specifically, Plaintiff moves the Court to grant summary judgment on her claim for short-term disability benefits.  (Doc. 20).  Because "[a] district court's review of an ERISA action is generally based solely upon the administrative record," the Court construes Plaintiff's Motion as a Motion for Judgment on the Administrative Record.  *Wagner v. CIBA Corp.*, No. 3:09-CV-356, 2010 WL 1610995, at *1 (S.D. Ohio Apr. 15, 2010) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998)).  For their part, Defendants move the Court for Judgment on the Administrative Record with respect to Plaintiff's claim for benefits.  (Docs. 25, 26).  Fully briefed, the matter is ripe for decision.  For the reasons that follow, Defendants' Motions are **DENIED**, and Plaintiff's Motion is **GRANTED in part**.  **IT IS FUTHER ORDERED** that the case is **REMANDED** to Defendants

for a full and fair review of Plaintiff's claim.

## I.    BACKGROUND

### A.  Plaintiff's Claim for Short-Term Disability Benefits

Defendant American Honda Motor Company, Inc. sponsors a short-term disability plan for eligible employees (the "Plan"), and Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") administers the Plan.  (Doc. 2 at ¶¶ 1, 2).  Plaintiff, an employee of Honda Trading Corporation, a division of American Honda Motor Co., Inc. ("Honda"), was a participant in the Plan.  (Doc. 2 at ¶¶ 1, 6).  Plaintiff alleges she suffers from ankylosing spondylitis, manifesting itself as fibromyalgia, uveitis, sacroiliitis, inflammatory arthropathy, and fatigue.  Due to this alleged impairment, Plaintiff's last day of work at Honda was May 3, 2017.  (*Id.* at ¶¶ 8, 13).

On May 22, 2017, Sedgwick sent Plaintiff information on how to submit a claim for short term disability benefits under the Plan.  (Doc. 15-1, Tr. 147, PAGEID #: 251).  Plaintiff applied for Plan benefits to be paid retroactively as of May 4, 2017.  (*Id.*, Tr. 226–33, PAGEID #: 303–11).  Sedgwick then requested additional documentation from Plaintiff's physician, Dr. Matthew Mundwiler, regarding Plaintiff's disability claim.  (*Id.*, Tr. 224, PAGEID #: 301).  In addition, Sedgwick provided Dr. Mundwiler with a "Concurrent Disability and Leave Statement of Incapacity/Attending Physician Statement" form.  (*Id.*, Tr. 231–33, PAGEID #: 308–10).  Dr. Mundwiler completed the form and noted that Plaintiff would be incapacitated from May 4, 2017 to July 6, 2017.  (*Id.*, Tr. 231, PAGEID #: 308).  He reported Plaintiff's diagnoses as spondyloarthropathy, inflammatory arthritic condition, and fibromyalgia.  (*Id.*, Tr. 232, PAGEID #: 309).  Dr. Mundwiler also stated that Plaintiff suffers from the "co-morbid conditions" of fatigue, insomnia, and chronic pain.  (*Id.*).  Question eight of the Physician Statement specifically requested the particular job functions Plaintiff was unable to perform.  (*Id.*, Tr. 231, PAGEID #:

308). Dr. Mundwiler responded that Plaintiff was unable to travel, fly, or spend extended time walking or standing. (*Id*.).

Plaintiff completed a functional capacity evaluation (the "FCE") on May 30, 2017. (*Id*., Tr. 253–60, PAGEID #: 330–37). As part of the process, Plaintiff performed a number of tasks designed to assess her posture, flexibility, ambulation, hand function, and strength. (*Id*., Tr. 257–59, PAGEID #: 334–36). Dr. Jennifer Segner-Maxwell, the physical therapist who performed the evaluation, noted that Plaintiff "reported discomfort in her wrist, back, knees and hips" as "part of the reason for limitations throughout the FCE." (*Id*., Tr. 265, PAGEID #: 342). Dr. Segner-Maxwell also opined that Plaintiff's "[o]bjective signs coincided with [her] reports of discomfort." (*Id*., Tr. 253, PAGEID #: 330). Plaintiff performed differently on the second day of testing, which Dr. Segner-Maxwell explained was "more reflective of what she is capable of repeating on a day to day basis. She struggled to complete the tasks due to pain." (*Id*.). Based on Plaintiff's performance, Dr. Segner-Maxwell concluded that Plaintiff suffers from a "[p]rogressive/deteriorating diagnosis," that her "physical abilities are greatly limited by her pain and discomfort," and that her "physical limitations present a barrier to return to work." (*Id*.).

On June 8, 2017, Dr. Mundwiler provided Sedgwick with office visit notes from Plaintiff's May 19, 2017 appointment. (*Id*., Tr. 240, PAGEID #: 317). His notes state that Plaintiff suffers from "pain in right wrist" and has "right wrist synovitis." (*Id*., Tr. 240, PAGEID #: 317). He also described Plaintiff's job requirements:

> Travel a big part of job. Responsible for getting new accounts. In car twice a week traveling (sitting for long periods). Has to wear steel toed boots, climb things. In office, sits as [sic] desk most of day. Is unable to get standup desk. Only allowed to do 15 min on walking treadmill before retuning to desk. Conferences can be 12-14 hour days with a lot of walking, little rest.

(*Id*., Tr. 241, PAGEID #: 318).

On June 9, 2017, Defendants denied Plaintiff's claim. (*Id.*, Tr. 244–45, PAGEID #: 321–22). In its denial letter, Sedgwick explained that Plaintiff failed to "submit[] objective medical evidence to substantiate a disability for this time period." (*Id.*, Tr. 244, PAGEID #: 321). The Plan defines "Total Disability" as:

> The complete inability of a Participant, due to physical or mental illness, injury, or other condition, to perform each and every assigned duty of his/her regular or customary occupation. The determination of Disability shall be made by the Plan Administrator on the basis of Objective Medical Evidence.

(Doc. 31-1, Tr. 12, PAGEID #: 950). The Plan goes on to define "Objective Medical Evidence" as:

> . . . medical demonstration of anatomical, physiological, or psychological abnormalities manifested by signs or laboratory findings, apart from the Claimant's perception of his or her mental or physical impairments. These signs are observed through medically acceptable clinical techniques such as medical history and physical examination. Laboratory findings are manifestations of anatomical, physiological, or psychological phenomena demonstrated by chemical, electrophysiological, roentgen logical, or psychological tests.

(*Id.*, Tr. 9, PAGEID #: 947).

### B. Plaintiff's Appeal

On June 14, 2017, Plaintiff appealed Defendants' decision, alleging she "did not believe that [Sedgwick had] all the necessary information" at the time of its initial review. (Doc. 15-1, Tr. 262, PAGEID #: 339). Plaintiff stated she was in "a vicious cycle of traveling for work, a big part of my job" and explained her various physical issues stemming from her Spondylitis diagnosis and corresponding pain. (*Id.*). She attached the following documents to her appeal letter: two pages of medical records; the FCE; a May 26, 2017 letter from Dr. Mundwiler; a July 12, 2016 e-mail from her employer; and an internet article about Spondyloarthritis. (*Id.*, Tr. 263–71, PAGEID #: 340–48). Dr. Mundwiler's letter provides:

> I have the pleasure of treating Jennifer Miller. She suffers from an inflammatory arthritic condition that flared during her recent work and conference trip. She was seen treated on May 19, 2017. Her current status is making it very difficult for her to work so it was decided that short term disability is appropriate. She will be undergoing a function assessment with physical therapy [sic] appropriate. She will be reassessed on June 19, 2017.

(*Id.*, Tr. 266, PAGEID #: 343).

On June 22, 2017, Sedgwick sent a letter to Plaintiff, acknowledging receipt of her appeal and requesting that she provide all relevant information. (*Id.*, Tr. 283–84, PAGEID #: 360–61). Plaintiff then submitted records from her June 19, 2017 appointment with Dr. Mundwiler, which contained his impression of Plaintiff's condition:

> History of Crohn's disease followed by fibromyalgia. Crohn's in remission but she is showing signs of spondylitis more recently. Presentation has evolved to [an] active spondylitis with co morbid fibromyalgia and a history of Chron's flares . . .

(*Id.*, Tr. 287, PAGEID #: 364).

Sedgwick submitted Plaintiff's file to two independent medical reviewers: Dr. Howard Grattan, a board-certified physician in physical medicine, rehabilitation, and pain medicine (*Id.*, Tr. 561, PAGEID #: 638), and Dr. D. Dennis Payne Jr, a board-certified physician in internal medicine and rheumatology. (*Id.*, Tr. 555, PAGEID #: 632). Plaintiff's file consisted of the following: her previous medical records from Dr. Mundwiler at Columbus Arthritis Center, Inc. (*Id.*, Tr. 442–57, PAGEID #: 519–34); the FCE performed by Jennifer Segner-Maxwell, Doctor of Physical Therapy, of WorkWell Systems, Inc. (*Id.*, Tr. 410–17, PAGEID #: 487–94); X-rays performed by the Columbus Arthritis Center, Inc., (*Id.*, Tr. 526, 529–30, PAGEID #: 603, 606–07); an MRI performed by OhioHealth (*Id.*, Tr. 527–28, PAGEID #: 604–05); and labs performed by LabDaq (*Id.*, Tr. 502–25, PAGEID #: 579–602).

Dr. Grattan reviewed Plaintiff's records and provided brief summaries of the findings. (*Id.*, 550–52, PAGEID #: 627–29). His "physical medicine and rehabilitation synopsis" provides:

> The claimant is diagnosed with spondyloarthropathy, fibromyalgia and Crohn's, inflammatory arthritic condition, ankylosing spondylitis, low back pain, severe joint pain, with excessive activity and prolonged immobility, ganglion cyst, and severe joint pain to the bilateral wrist, knees, hips, low back and neck.

(*Id.*, Tr. 550, PAGEID #: 627). After a brief recitation of Plaintiff's medical history, Dr. Grattan concluded that Plaintiff "has not had any functional impairments from 05/04/2017 through return to work or any portion of the review period that would affect her ability to perform the regular, unrestricted duties of her job or occupation." (*Id.*, Tr. 552, PAGEID #: 629). Question three of the evaluation form states: "If you have determined that the available information is lacking in the kinds of examination findings important to document impairment, please indicate the types of examination findings that could be obtained . . ." (*Id.*, Tr. 553, PAGEID #: 630). Dr. Grattan indicated that he required additional objective studies supporting Plaintiff's claim:

> After review of the medical information, although the claimant does have pathology on MRI studies, there is no evidence of any ongoing motor weakness, altered sensation, gait or balance abnormalities that would be helpful to document impairment. This would be helpful in determination of further restrictions and limitations.

(*Id.*). Question six of the form states: "Please indicate, based on the reported diagnosis and the medical facts available why you agree or disagree with the treating providers opinion regarding the claimant's level of functional impairment." (*Id.*). Dr. Grattan responded:

> The reported diagnosis includes spondyloarthropathy, fibromyalgia, and Crohn's, inflammatory arthritic condition, ankylosing spondylitis, low back pain, severe joint pain, with excessive activity and prolonged immobility, ganglion cyst, and severe joint pain to the bilateral wrists, knees, hips, low back and neck. There is no clear opinion outlined by the treating provider regarding the claimant's level of functional impairment.

(*Id.*). Finally, Dr. Grattan provided the following rationale for his ultimate decision:

> . . . The claimant has complaints of wrist, back, knees and hip discomfort. On multiple occasions she was noted to have tenderness. The MRI of the pelvis from

05/24/16 did not reveal any osseous erosions of marrow edema. . . . She underwent a Functional Capacity Evaluation on 05/20/17 where she was noted to have mild weakness and gave maximal effort. However it was noted her physical abilities are greatly limited by her pain and discomfort. The claimant appears to be limited due to pain rather than clear observable abnormalities resulting in restrictions and limitations from her own occupation. The documentation provided for review does not describe findings of the severity that would affect her ability to perform the regular, unrestricted duties of her occupation from a physical medicine & rehabilitation perspective from 05/04/2017 through return to work.

(*Id.*, Tr. 560, PAGEID #: 637).

Dr. Payne also reviewed Plaintiff's records and, like Dr. Grattan, provided a brief recitation of the findings. (*Id.*, Tr. 557–59, PAGEID #: 634–36). According to his report, Dr. Payne spoke with Dr. Segner-Maxwell, the therapist who performed Plaintiff's FCE, on May 20, 2017. (*Id.*, Tr. 557, PAGEID #: 634). Dr. Payne asked Dr. Maxwell about the findings "from a rheumatology perspective" and concluded that "[t]here was no synovitis, weakness, or atrophy and no focal neurological deficits." (*Id.*). Dr. Maxwell "did state," however, "that the claimant was in a significant amount of pain the second day of the evaluation due to tenderness" and that she "did not feel the claimant was able to function at a level to perform work." (*Id.*). Dr. Payne concluded "[f]rom a rheumatology perspective, no restrictions or limitations are supported with the claimant retaining the ability to perform her regular job as an Account Representative." (*Id.*, Tr. 559, PAGEID #: 636).

In response to question six on the evaluation form—"why you agree or disagree with the treating provider's opinion regarding the claimant's level of functional impairment"—Dr. Payne responded that he "disagree[d] with there being impairment in this file due to a lack of objective findings in the historical data, examination findings, work-up data, or clinical course information on which to base impairment." (*Id.*, Tr. 560, PAGEID #: 637). He summarized his findings in his rationale:

Jennifer Miller is a 36 year old [ ] female with a history of spondyloarthropathy, fibromyalgia, and Crohn's disease. She is employed as an Account Representative. There is apparently some travel involved. . . .

The historical data note diffuse pain and sleep problems with fatigue. No musculoskeletal damage is historically described. A fibromyalgia picture is predominating. She has a normal CBC, chemistry, thyroid functions, and negative ANA, RF, and anti-CCP. Her ESR and CRP are normal. There are multiple determinations of the CBC, chemistry, ESR and CRP throughout her clinical course and are all normal. A chest x-ray is normal and her MRI of the pelvis and SI regions reveals the minimal degenerative disease without evidence of any inflammatory features. . . . The findings in this file would not support restrictions or limitations from a rheumatology viewpoint. She would be expected to retain the ability to perform her regular job as an account representative from 5/4/17 to return to work.

(*Id.*, Tr. 561, PAGEID #: 638).

On July 17, 2017, Defendants denied Plaintiff's appeal and provided the following explanation:

Dr. Payne spoke with Ms. Maxwell on July 07, 2017 who noted that she had done a two day functional capacity evaluation on you. When asked about the findings from a rheumatology perspective, there was no synovitis, weakness, or atrophy and no focal neurological deficits. Ms. Maxwell did state that you were in a significant amount of pain the second day of the evaluation due to tenderness and Ms. Maxwell did not feel you were able to function at a level to perform any work.

After review of the medical information, although you do have pathology on MRI studies, there is no evidence of any ongoing motor weakness, altered sensation, gait or balance supporting impairment. The recent functional capacity evaluation notes mild weakness with maximal effort. However, it was noted your physical abilities are greatly limited by pain and discomfort. The overall findings are mild in severity and do not support an inability to perform the essential functions of your job. The examination findings note diffuse tenderness and tender points. There is no synovitis, weakness, or atrophy, and no damage or deformities. As the medical information in the file does not support your inability to perform your own occupation, as defined by the Plan quoted above, we have no alternative other than to reaffirm the denial of benefits for the period of May 04, 2017 through your return to work date.

(*Id.*, Tr. 565–66, PAGEID #: 642–43).

## II.    STANDARD OF REVIEW

A challenge to an ERISA plan's denial of benefits is reviewed *de novo* unless, as is the

case here, the plan "'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If a plan grants such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the deferential 'arbitrary and capricious' standard of review." *Id.* (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998)). "This standard 'is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Id.* (quoting *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

The Court reviews Defendants' decision to deny Plaintiff benefits under the deferential arbitrary and capricious review because, as both parties acknowledge, the Plan tasks Sedgwick with the discretionary authority to interpret and apply the plan. (*See* Doc. 31-1, Tr. 21–22, PAGEID #: 959–60). Moreover, the parties agree this deferential standard applies here. (*See* Docs. 12, 20). While the arbitrary and capricious standard is indeed deferential, "it is not . . . without some teeth." *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quotation omitted). "The arbitrary-and-capricious standard [ ] does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metro Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald*, 347 F.3d at 172). Rather, "a decision will be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quotations omitted).

The Court, therefore, has an "obligation under ERISA to review the administrative record

in order to determine whether the plan administrator acted arbitrarily and capriciously." *Evans*, 434 F.3d at 876. This review "'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Id*. (quoting *McDonald*, 347 F.3d at 172).

## III.    DISCUSSION

Defendants' argument is simple: The Plan requires objective evidence; the medical reviewers determined Plaintiff's file lacked objective evidence; accordingly, under the terms of the Plan, Plaintiff is not entitled to benefits. (*See* Docs. 22, 25, 26). The trouble for Defendants, however, is that it is not that simple. While Defendants are correct that it is reasonable for an insurer to request objective evidence of a claimant's disability (*See Rose*, 268 F.3d at 453), a plan administrator's inquiry is not finished the moment it concludes there is a lack of objective evidence.

Indeed, the Sixth Circuit has expressed skepticism of an administrator's demand for objective evidence in a case—like this one—where the administrator engaged in a flawed process and where the record contained substantial evidence of a claimant's pain. *See, e.g.*, *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397 (6th Cir. 2015); *Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 301–02 (6th Cir. 2018) (rejecting defendant's argument that claimant "failed to prove through objective evidence how her pain render[ed] her unable to do her job," and citing *Godmar* in holding that defendant's decision "was arbitrary and capricious because [defendant] had the option to conduct a physical examination, yet declined to do so even though there was clear medical consensus that [plaintiff] suffered from . . . a disease medically known to cause chronic and severe pain—and abundant evidence that she in fact experienced that pain.").

District Courts have followed suit. *See, e.g.*, *Groth v. Centurylink Disability Plan*, No.

2:13-CV-1238, 2016 WL 1621724, at *13 (S.D. Ohio Apr. 25, 2016) (citing *Godmar* and holding that "[a]bsent an examination, a plan should not make a credibility determination about a plaintiff's reports of pain even under an objective-evidence standard"); *Mendez v. FedEx Express*, No. 15-CV-12301, 2016 WL 4429598, at *4 (E.D. Mich. Aug. 22, 2016) (citing *Godmar* and holding that plan administrator "could not ignore [plaintiff's] extensive complaints of pain, even if they were 'subjective.'"). Thus, under relevant precedent, a plan administrator may not insulate its flawed process simply by pointing to a plan's objective-evidence standard. Yet this is precisely what Defendants have done.

Plaintiff argues that the process here was flawed in two primary ways: (1) Sedgwick and Honda relied on an "inaccurate" and "incomplete" job description, which "skew[e]d the peer reviewer opinions"; and (2) Sedgwick's peer review physicians "brushed aside" Plaintiff's assertions of pain without ordering a physical examination of Plaintiff. (*See* Doc. 20). As to her second argument, Plaintiff asserts that Defendants acted arbitrarily and capriciously in failing to credit her treating physician, Dr. Mundwiler's opinions, and instead resting their decision on the reviewing doctors' credibility findings regarding her chronic pain. (Doc. 20 at 7). She further contends that these credibility findings were especially problematic given that Defendants could have exercised the right to order a physical examination to assess her pain but chose not to. (*Id*. at 6–8).

### A. Defendants' Reliance on File Reviews

The Court first considers whether a file review alone was enough in this case. An administrator is not required to order a physical examination of a claimant and may, in some circumstances, rely solely on the claimant's file in drawing its conclusion. *See Calvert v. Firestar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Indeed, there is "nothing inherently objectionable

about a file review by a qualified physician in the context of a benefits determination." *Id.* "The decision to conduct only a file review is, however, a factor in the Court's determination." *Bladowski v. Prudential Ins. Co. of Am.*, No. 2:09-cv-11936, 2010 WL 4880775, at *8 (E.D. Mich. Nov. 12, 2010) (citing *Smith v. Continental Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006)). "The Sixth Circuit has held that 'the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'" *Id.* (quoting *Calvert*, 409 F.3d at 295, 296–97).

Relevant here, a file-only review is particularly troublesome where "conclusions from [the] review include critical credibility determinations regarding a claimant's medical history and symptomology." *Calvert*, 409 F.3d at 295 n.6. *See also Godmar*, 631 F. App'x 397 at 407 ("'Because chronic pain is not easily subject to objective verification, the Plan's decision to conduct only a file review supports a finding that the decision-making was arbitrary and capricious.'" (quoting *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015))); *Zenadocchio v. BAE Sys. Unfunded Welfare Benefit Plan*, 936 F. Supp. 2d 868, 891 (S.D. Ohio 2013) ("The Court is not claiming [the plan administrator] was under a responsibility to perform an in-person examination, however, the Court does find that [the administrator] did not engage in reasonable procedures in deciding the extent to which [plaintiff's] fibromyalgia and other medical conditions either physically or mentally impacted her ability to perform her duties[.]").

Here, Honda's Plan grants Sedgwick the right to order a physical examination as part of its review of a disability claim. (Doc. 31-1, Tr. 20, PAGEID #: 958). Consequently, the Court considers Defendants' decision to conduct a file-only review as a factor in its analysis. *See*

*Bladowski*, 2010 WL 4880775, at *8 (citing *Smith*, 450 F.3d at 263). Just like in *Godmar*, Sedgwick's decision here "not to exercise that right raise[s] questions about the thoroughness and accuracy of the benefits determination." 631 F. App'x at 404. Moreover, as established below, Defendants and the reviewing physicians engaged in credibility determinations without ordering a physical examination. Consequently, Defendants' decision to rely on only Plaintiff's file weighs in favor of a finding that their review process was arbitrary and capricious.

### B. Defendants' Credibility Determinations Regarding Plaintiff's Pain

Relying only on the file in front of them, Sedgwick's medical reviewers made critical credibility findings regarding Plaintiff's pain. The Court finds these credibility determinations troubling, especially considering Defendants' choice not to order a physical examination of Plaintiff. *See e.g.*, *Smith*, 450 F.3d at 263 (6th Cir. 2006) (finding that insurer arbitrarily denied a claim for benefits where the physician it hired to review the file made credibility determinations concerning a patient's subjective complaints of pain, which were noted in the treating physician's records, without conducting a physical examination of the patient); *Lewis v. Liberty Life Assurance Co. of Boston*, No. 3:12-CV-00215-H, 2013 WL 2319349, at *5 (W.D. Ky. May 28, 2013) ("Liberty is permitted to rely on a file review in its decision to award benefits; however, it nonetheless had the ability to order an in-person physical exam and chose not to. This decision is problematic given that some of Lewis' most disabling conditions and their severity are fundamentally subjective."); *Caudill v. Hartford Life and Acc. Ins. Co.*, No. 1:13-cv-017, 2014 WL 1922828, at *26 (S.D. Ohio May 14, 2014) (finding that "[d]espite [plaintiff's doctor's] diagnosis of fibromyalgia and the subjective nature of the disease, [the reviewing physician] discounted plaintiff's allegations of muscle pain and weakness, and she failed to take into account restrictions noted by [plaintiff's doctor] . . . based on lack of any objective limitations on

examination . . ." and holding it was not "reasonable for [the plan administrator] to disregard plaintiff's subjective complaints without conducting an in-person medical examination."); *Mendez*, 2016 WL 4429598, at *3 (finding file-only review "especially troubling given that the physicians Aetna hired to conduct a file review [] noted and then disregarded the extensive complaints of severe pain recognized by [plaintiff's] treating physicians.").

The Sixth Circuit's decision in *Godmar* again provides guidance. In that case, Sedgwick also served as the plan administrator of a similar plan, which required a claimant to submit objective evidence supporting his or her disability. *Id*. at 399. Sedgwick concluded, as it did here, that there was "insufficient objective evidence to support the plaintiff's claim of total disability." *Id*. at 401. The plaintiff then challenged Sedgwick's decision-making process, arguing that it improperly relied on a file-only review, "selectively reviewed the record and improperly dismissed his limitations as subjective." *Id*. at 402. The Sixth Circuit agreed. *Id*.

The crux of the court's issue with Sedgwick's decision was its credibility findings in light of its choice not to order a physical examination of the plaintiff:

> Sedgwick appears to have rejected the treating physicians' clinical impressions mainly because they relied on Godmar's descriptions of his pain. Sedgwick made this judgment without conducting an independent medical examination, relying only on a file review. We have explained that there is nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination. However, Sedgwick had the right to examine Godmar under the Plan, and the decision not to exercise that right raise[s] questions about the thoroughness and accuracy of the benefits determination.

*Id*. (internal quotations and citations omitted).

While Sedgwick "acknowledged [plaintiff's] extensive injuries and his treating physicians' continuous documentation of pain in his left leg," the consulting physicians "dismissed [his] reported pain—and any corroborating diagnosis by his treating physicians—as inherently subjective." *Id*. at 407. The Sixth Circuit found that the very treatment of the plaintiff's pain as

subjective, constituted an "implicit[] determin[ation] that [his] description of his limitations was not credible." *Id.* (citing *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 395–96 (6th Cir. 2009) (holding that dismissing a claim as subjective is an implicit credibility determination)). Relevant here, the Sixth Circuit held that an administrator "'should not [make] a credibility determination about . . . continuous reports of pain' without an examination, *even under an objective-evidence standard*." *Id.* (quoting *Shaw*, 795 F.3d at 550) (emphasis added).

Here, like in *Godmar*, the medical reviewers' reports explicitly cite numerous reports of Plaintiff's pain. For example, Dr. Grattan referenced Dr. Mundwiler's notes from July 13, 2016, which provide that Plaintiff "has significant hip pain" and "significant trochanteric bursa pain." (Doc. 15-1, Tr. 551, PAGEID #: 628). He also expressly referenced Dr. Mundwiler's February 24, 2017 office visit notes, which state that Plaintiff "has been showing signs of spondylitis more recently," that she has "increased pain in the hips radiating to the knees," and that "[o]n examination she has tenderness to the lumbar, hips, and knees," along with "swelling to the bilateral knees." (*Id.*, Tr. 552, PAGEID #: 629). Notably, Dr. Grattan also reviewed Plaintiff's FCE and Dr. Segner-Maxwell's opinion that Plaintiff's "physical abilities are greatly limited by pain and discomfort." (*Id.*).

Similarly, Dr. Payne considered Dr. Mundwiler's reports regarding Plaintiff's pain. (*See, e.g.*, *id.*, Tr. 557–58, PAGEID #: 634–35 ("Dr. Mundwiler indicates she is tender all over with fatigue and sleep problems"; "Dr. Mundwiler indicates she has continued pain and somatic complaints"; "Dr. Mundwiler indicates there are no changes. She has the diffuse pain and sleep problems with fatigue"; Dr. Mundwiler indicates she has continued pain. The fibromyalgia picture is predominating"; "Dr. Mundwiler indicates she has pain in the right wrist. Synovitis is diagnosed and the joint is infected"; "Dr. Mundwiler notes she has an inflammatory arthritic condition and

will require short term disability")).  Like Dr. Grattan, Dr. Payne also considered Plaintiff's FCE and Dr. Segner-Maxwell's opinion that Plaintiff is "very limited by pain and discomfort" and that "[i]n the testing, the limiting factors during testing are 'severe pain, increased pain, and lack of safe body mechanics.'"  (*Id.*, Tr. 559, PAGEID #: 636).

Thus, the reviewing physicians were acutely aware of Plaintiff's reports of pain.  Despite this, they relied on the Plan's objective-evidence standard and dismissed her reported pain—and the corroborating diagnoses by her treating physician and Dr. Segner-Maxwell—as subjective. (*See id.*, Tr. 554, PAGEID #: 631 ("The claimant appears to be limited due to pain rather than clear observable abnormalities resulting in restrictions and limitations from her own occupation."); *id.*, Tr. 560, PAGEID #: 637 ("I disagree with there being impairment in this file due to a lack of objective findings in the historical data, examination findings, work-up data, or clinical course information on which to base impairment.")).  In doing so, the reviewing physicians implicitly concluded that Plaintiff's reports of pain were not credible, and Defendants subsequently adopted these findings.  *See Godmar*, 631 F. App'x 391 at 407; *see also Mendez*, 2016 WL 4429589, at *4 (holding that defendant "could not ignore [plaintiff's] extensive complaints of pain even if they were 'subjective'" and noting that "[i]mplicit in the Review Committee's decision [was] a determination that [plaintiff's] subjective complaints of severe pain lacked credibility," which was improper because "without ever examining [plaintiff], the Plan should not have made a credibility determination about his continued reports of pain.").

In sum, Defendants' credibility determinations regarding Plaintiff's pain, in light of its decision to rely on only Plaintiff's file and the inherently subjective nature of Plaintiff's condition, support a finding that Defendants' process was arbitrary and capricious.

### C. Defendants' Demand for Objective Evidence

In support of perhaps their best argument, Defendants emphasize the Plan's definition of "Total Disability" and "Objective Medical Evidence," arguing that, under the terms of the Plan, Sedgwick acted rationally because "Plaintiff failed to provide objective medical evidence of her present medical condition" that would "substantiate" a finding of "Totally Disabled." (*See* Docs. 22, 25, 26). Defendants rely on the reviewing physicians' conclusions that the objective evidence did not support Plaintiff's claim for this argument. (*See, e.g.*, Doc. 15-1, Tr. 560, PAGEID #: 637 (noting list of "normal" findings, including, Plaintiff's CBC, thyroid functions, x-rays, hepatitis and TB panel, lack of synovitis, weakness, or atrophy, and no damage or deformities, and concluding that "[t]he findings in this file would not support restrictions or limitations from a rheumatology viewpoint."); (*id.*, Tr. 559, PAGEID #: 636) (noting that "[w]ith respect to a rheumatology viewpoint, one would expect to see musculoskeletal findings that would typify a condition, disease, or syndrome that can produce synovitis, weakness, atrophy, joint damage, deformities, or extra-articular manifestations . . .")).

As already noted, there is nothing inherently objectionable about Defendants' demand for objective medical evidence. *See Rose*, 268 F. App'x 444 at 543. An administrator's decision, however, may be found to be arbitrary and capricious "when there is, in fact, objective medical evidence of the underlying condition which forms part of the basis of an opinion that a claimant is disabled due to pain, and the plan administrator performs a selective, rather than comprehensive review of the records in reaching the opposite conclusion." *Caudill*, 2014 WL 1922828, at *20 (citing *Ebert v. Reliance Standard Life Ins. Co.*, 171 F. Supp. 2d 726, 739–40 (S.D. Ohio 2001) (finding that, where the record contained evidence of physical conditions which could cause pain, it constituted a "complete misreading of the medical records . . . to say that Plaintiff's complaints

of pain or weakness . . . are subjective and unverifiable.")).

Relevant here, there exists a clear "tension accompanying a claim for benefits in the context of fibromyalgia, a disease associated with inherently subjective symptoms, and the demand for objective evidence in regards to this disease." *Zenadocchio*, 936 F. Supp. 2d at 886. Notably, however, an FCE—like the one performed on Plaintiff—is a proper form of objective evidence to support a claimant's reports of pain. *See Tobin v. Hartford Life and Accident Ins. Co.*, 233 F. Supp. 3d 578, 584 (W.D. Mich. 2017). In *Tobin*, the Sixth Circuit noted that an FCE could serve as a form of objective evidence supporting an inherently subjective condition like fibromyalgia:

> Although fibromyalgia may defy diagnosis by objective medical testing, an insurer may request objective evidence of a claimant's functional capacity. So, even though a claimant might not be able to provide objective medical evidence to support a fibromyalgia diagnosis, the claimant could be asked to provide objective evidence of a disability arising from the diagnosis, *such as a functional capacity evaluation*.

*Id*. (citing *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 500 (6th Cir. 2008)) (internal quotations omitted) (emphasis added).

As Defendants acknowledge, Plaintiff submitted the report from her FCE, which documented Dr. Segner-Maxwell's analysis of observable and verifiable data regarding her physical capacities. (Doc. 15-1, Tr. 253–61, PAGEID #: 330–38). Accordingly, while Defendants were entitled to request objective evidence, the Court is somewhat confused by their insistence that Plaintiff failed to submit objective evidence of her pain in accordance with the requirements of the Plan. (*See, e.g.*, Doc. 25 at 19).

As part of her FCE, Plaintiff completed the following: (1) three physical tasks to evaluate her lifting capabilities; (2) six tasks to evaluate her posture, flexibility, and ambulation; and (3) two tasks to evaluate her hand function. (Doc. 15-1, Tr. 255–56, PAGEID #: 332–33). While Dr. Segner-Maxwell documented some normal findings, she repeatedly noted Plaintiff's substantial

pain. (*See id.* (reporting "pain-wrist, back, neck, bilateral knees and hips which resulted in a breakdown of proper/safe lifting mechanics as the weight and reps increased"; "increased pain" while forward bending-standing; "severe back, neck, hip and knee pain" while kneeling and half kneeling; "back, hip and knee pain" during six-minute walk test; "severe pain with prolonged sitting.")). She also opined that Plaintiff's "job requires travel and prolonged standing/walking, which "she is no longer able to tolerate" because "[h]er joints swell and the pain increases with activity which affects her ability to do the job she is required to do." (*Id.*, Tr. 260, PAGEID #: 307). Importantly, Dr. Segner-Maxwell concluded that "[o]bjective signs coincided with the client's reports of discomfort." (*Id.*, Tr. 253, PAGEID #: 330).

Therefore, contrary to Defendants' assertions otherwise, Plaintiff's file contains objective evidence which could support her disability. Under these circumstances, Defendants' conclusory assertion that Plaintiff's file lacked objective evidence supports a finding that Defendants' decision was arbitrary and capricious. *See Ebert*, 171 F. Supp. 2d at 739–40.

### D. Defendants' Decision Not to Credit the Opinion of Plaintiff's Treating Physician

Implicit in Defendants' decision, is their dismissal of Dr. Mundwiler's opinions regarding the severity of Plaintiff's condition. As Plaintiff acknowledges, the "treating physician" rule does not apply in the ERISA context; "however, plan administrators 'may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of the treating physician[.]'" *Zenadocchio*, 936 F. Supp. 2d at 888 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003)).

In determining whether a plan administrator has arbitrarily disregarded the opinion of a treating physician, this Court has provided examples of an arbitrary disregard:

> One situation is where the evidence from the treating physicians is strong and the opposing evidence is equivocal, at best, and also lacking in evidentiary support.

Another is where the contrary opinion of the non-treating physician was not based on an examination of the claimant and was supported only by a selective, rather than a fair, reading of the medical records. Arbitrary decisions may also include ones which accept a file reviewer's disregard of subjective reports of symptoms based solely on a review of medical records which do not contain objective support for the claimant's complaints, and ones relying on an expert opinion that does not address crucial aspects of the claimant's former job and which is in conflict with other credible evidence in the record, including the opinion of the treating source.

*Combs v. Reliance Std. Life Ins. Co.*, No. 2:08-cv-102, 2012 WL 1309252, at *10 (S.D. Ohio Apr. 12, 2012) (internal citations omitted). In other words, "a plan administrator is not bound to accept a treating physician's opinion, but the administrator may not reject a treating physician's opinion without reason." *Caudill*, 2014 WL 1922828, at * 19. Here, the review process reflects an arbitrary disregard of Plaintiff's treating physician.

To start, "arbitrary decisions may include ones"—like this one— "which accept a file reviewer's disregard of subjective reports of symptoms based solely on a review of medical records[.]" *Combs*, 2012 WL 1309252, at *10. Moreover, in reading the medical reviewers' reports, the Court finds that their conclusions were not based on an examination of Plaintiff but instead were supported by a "selective, rather than a fair" reading of her medical records. *Id*. "[P]lan administrators may not engage in a 'selective review of the administrative record' . . . by ignoring evidence of disability or giving undue weight to evidence favoring denial[.]" *Godmar*, 631 F. App'x 397 at 402 (quoting *Moon v. Unum Provident Corp.*, 506 F.3d 373, 381 (6th Cir. 2005)). Indeed, this Court has admonished this sort of "cherry picking":

Cherry picking undermines a deliberate or principled process: When an administrator focuse[s] on slivers of information that *could* be read to support a denial of coverage and ignore[s]—without explanation—a wealth of evidence that directly contradict[s] its basis for denying coverage, the administrator' decision-making process is not deliberate or principled.

*Groth*, 2016 WL 162174, at *12 (internal quotations and citations omitted).

Here, the medical reviewers' reports reflect improper "cherry picking." The reviewers

failed to credit any of the evidence in the record supporting Plaintiff's claim, and instead cited Plaintiff's "normal" test results as evidence of her ability to work. The Court is skeptical of this process. Pointing to a laundry list of a claimant's normal test results does not in turn support a finding that the claimant did not suffer from chronic pain, impacting his or her ability to work. *See, e.g.*, *Costello v. Sun Life Assurance Co. of Canada*, No. 1:08-CV-00157-M, 2009 WL 3347102, at *5 (W.D. Ky. Oct. 14, 2009). In *Costello*, the Court rejected a similar argument made by the plan administrator:

> Sun Life says that it denied Costello's claim because her medical records did not support a finding that she was unable to work since, inter alia, there was no evidence of 'joint swelling, joint deformities, joint space narrowing and joint erosions . . . and she has full range of motion of her joints. As you can see,' Sun Life explained in its letter to Costello, 'Dr. Ash found no persuasive medical support for the level of impairment described by [plaintiff's doctors]. . . The logic of Sun Life's decision seems to be that since Costello's medical records did not show the presence of swelling or joint erosion, Costello did not suffer debilitating pain as a result of her rheumatoid arthritis such that it would prevent her from the fine grasping or manipulating required to perform her job. However, this conclusion does not follow from the premise. While the presence of swelling or joint erosion might indicate that Costello suffered debilitating pain, the absence of such symptoms of rheumatoid arthritis surely does not compel the contrary conclusion. Nor is such an inference even very reasonable given the evidence of Costello's pain in the record, and the determination of Dr. Sims that pain from her rheumatoid arthritis would prevent her from doing her job.

*Id.* (internal citations omitted).

In light of the above and upon examination of the medical reviewers' reports, the Court finds that Defendants arbitrarily disregarded the opinions of Plaintiff's treating physician. This weighs towards a finding that Defendants' process was suspect.

### E. Defendants' Inadequate Decision-Making Process

While a plan administrator's review process need not be perfect, it must reflect a "'deliberate, principled reasoning process.'" *Rose*, 268 F. App'x 444 at 449 (quoting *Elliott*, 473 F.3d at 617). In reviewing the Administrative Record and Defendants' decision in its entirety, the

Court finds that Defendants' review process does not live up to this standard. Indeed, as described throughout this opinion, Defendants failed to address or analyze important evidence in Plaintiff's file, engaged in only a "rote recitation" of Plaintiff's medical records, and relied on conclusory assertions and credibility determinations concerning Plaintiff's pain. *See Godmar*, 631 F. App'x at 403. Accordingly, Defendant's review process does not hold water. *See, e.g.*, *id.*; *Kalish v. Liberty Mut. Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 509 (6th Cir. 2005) (finding file review inadequate as it contained only a six-page summary of claimant's medical records, but only one page of analysis, which contained "little more than [the reviewing physician's] conclusory assertions to the effect that 'the available records do not document a need for restrictions or limitations that would necessarily preclude the employee from performing the duties of his job as described.'"); *Bladowski*, 2010 WL 4880775 at *9 ("Bladowski also asserts that Prudential looked only at his orthopedic restrictions, and failed to address evidence that he could not work because he had inadequate control over his pain. The Court agrees that the lack of analysis of Bladowski's pain favors a finding that Prudential's decision was arbitrary and capricious.").

The Sixth Circuit, in *Godmar*, elaborated on a similarly flawed decision-making process:

> The [denial] letter then provides a brief summary of the medical documentation—including 'chronic nerve pain,' 'ongoing pain management,' and 'opioid dependence with substantial limitations'—and offers a conclusory assertion that this evidence is insufficient to support disability benefits. But there appears to be no dispute that Godmar suffered from continuing injuries and pain from the water-skiing accident at the time he requested disability.

*Id*. Moreover, the court found Sedgwick's decision-making process "difficult to parse" and noted that the denial letter "offered little analysis of [plaintiff's] medical records" and contained only a "rote recitation of the records Sedgwick received and the steps taken by its consulting physicians." *Id*. at 403. In these respects, the Court finds this case strikingly similar to *Godmar*.

At bottom, the law does not demand a perfect process; it does, however, demand a fair and

reasoned one. The Court's decision rests only upon whether Defendants' decision to deny Plaintiff's claim for short-term disability benefits was "'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Rose*, 268 F. App'x at 449 (quoting *Elliott*, 473 F.3d at 617). The Court has engaged in a thorough review of the Administrative Record and has weighed the cumulative effect of Defendants' procedural errors. To summarize, Defendants' choice not to order a physical examination of Plaintiff, their improper credibility findings regarding Plaintiff's pain, the substantial evidence of Plaintiff's chronic pain, Defendants' decision not to credit the opinion of Plaintiff's treating physician, and Defendants' unsupported and inadequate decision-making process, all lead the Court to conclude that the denial of Plaintiff's claim was arbitrary and capricious. In other words, it was the "cumulative effect" of these factors, rather than any single factor, that results in a finding that Defendants' decision was arbitrary and capricious. *Zenadocchio*, 936 F. Supp. 2d at 885.

## IV. REMEDY

"In cases where a court is unable to uphold the decision of the plan administrator, the court may either award benefits or remand to the plan administrator for a full and fair review." *Godmar*, 631 F. App'x at 707. "Where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled," the appropriate remedy is to remand to the plan administrator. *Elliott*, 473 F.3d at 622.

The Court is not convinced, by the Administrative Record, that Plaintiff is entitled to benefits. Rather, the Court concludes only that Defendants failed to engage in a deliberate and principled reasoning process. Therefore, the Court believes that remand to Defendants for a full and fair inquiry is the proper remedy here. *See, e.g.*, *Helfman*, 573 F.3d at 396; *Smith*, 450 F.3d at 255. On remand, Defendants should "avoid making credibility determinations without the benefit

of a physical examination," and if they conclude that Plaintiff is not entitled to benefits, explain why the evidence proffered by Plaintiff's treating physicians "does not meet its objective-evidence standard as of a particular date." *Godmar*, 631 F. App'x at 407–08. Additionally, while it is not necessary that the Court provide a full analysis concerning Plaintiff's alleged incorrect job description, Defendants, on remand, should consider *all* evidence in the record—including any evidence that Plaintiff's job requires frequent travel. This remedy will allow for a proper determination of whether Plaintiff is entitled to disability benefits.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Judgment on the Administrative Record (Docs. 25, 26) are **DENIED**, and Plaintiff's Motion (Doc. 20), which the Court construes as a Motion for Judgment on the Administrative Record is **GRANTED in part**. **IT IS FUTHER ORDERED** that the case is **REMANDED** to Defendants for a full and fair determination consistent with this order.

IT IS SO ORDERED.


Date:  September 26, 2018             /s/ Kimberly A. Jolson
                                     KIMBERLY A. JOLSON
                                     UNITED STATES MAGISTRATE JUDGE